Peter S. Veregge (SBN 155,769)
peter@cislo.com
CISLO & THOMAS LLP
2829 Townsgate Road, Suite 330
Westlake Village, CA 91361
Telephone: 805-496-1164
Telefax: 805-435-8446

Michael N. Rader (admitted *pro hac vice*)
mrader@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
605 Third Avenue, 25th Floor
New York, NY 10158
212.697.7890 Phone | 617.646.8646 Fax

*Counsel for Defendants Sony Group*
*Corporation (Japan), Sony Corporation*
*of America, Sony Interactive Entertainment*
*LLC, Sony Pictures Entertainment Inc.,*
*and Sony Electronics Inc.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MZ AUDIO SCIENCES, LLC, | Case No. 2:22-cv-00866 AB (PDx) |
| Plaintiff, | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM** |
| v. | |
| SONY GROUP CORPORATION (JAPAN), SONY CORPORATION OF AMERICA, SONY INTERACTIVE ENTERTAINMENT LLC, SONY PICTURES ENTERTAINMENT INC., and SONY ELECTRONICS INC., | [Request for Judicial Notice; Declaration of Claire E. Schuster; [Proposed] Order filed concurrently] |
| Defendants. | **(Memorandum of Points and Authorities Attached Hereto)**<br>**Date: May 27, 2022**<br>**Time: 10:00 am**<br>**Ctrm: 7B (Hon. André Birotte Jr.)** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 27, 2022, at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 7B of the First Street Courthouse, 350 West First Street, Los Angeles, California 90012, Defendants Sony Group Corporation (Japan), Sony Corporation of America, Sony Interactive Entertainment LLC, Sony Pictures Entertainment Inc., and Sony Electronics Inc. (collectively, "Defendants" or "Sony") will and hereby do move the Court to dismiss Plaintiff MZ Audio Sciences, LLC's ("Plaintiff" or "MZ Audio") claims of infringement for failure to state a claim ("the Motion").

The Motion is made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiff's allegations of both direct and indirect infringement of U.S. Patent No. 7,289,961 ("the '961 patent") against Sony fall far short of the minimum pleading requirements necessary to provide Sony with fair notice and an opportunity to respond.

The Motion in based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the Request for Judicial Notice filed herewith, the Declaration of Claire E. Schuster filed herewith, additional briefing to be filed in connection with the Motion, any argument of counsel, the pleadings and papers on file herein, and such other matters as may be presented to the Court at or before the time of the hearing.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on April 21, 2022.

Dated: April 29, 2022          By: /s/ *Peter S. Veregge*
                                    Peter S. Veregge
                                    CISLO & THOMAS LLP
                                    2829 Townsgate Road, Suite 330
                                    Westlake Village, CA 91361
                                    Phone: (805) 496-1164
                                    Fax: (805) 435-8446

Michael N. Rader (admitted *pro hac vice*)
*mrader@wolfgreenfield.com*
WOLF, GREENFIELD & SACKS, P.C.
605 Third Avenue, 25th Floor
New York, NY 10158
212.697.7890 Phone | 617.646.8646 Fax

Randy J. Pritzker (admitted *pro hac vice*)
*rpritzker@wolfgreenfield.com*
Charles T. Steenburg (admitted *pro hac vice*)
*csteenburg@wolfgreenfield.com*
Claire E. Schuster (admitted *pro hac vice*)
*cschuster@wolfgreenfield.com*
Jie Xiang (admitted *pro hac vice*)
*jxiang@wolfgreenfield.com*
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
617.646.8000 Phone | 617.646.8646 Fax

*Counsel for Defendants Sony Group*
*Corporation (Japan), Sony Corporation of*
*America, Sony Interactive Entertainment*
*LLC, Sony Pictures Entertainment Inc., and*
*Sony Electronics Inc.*

# **TABLE OF CONTENTS**

I.    SUMMARY OF THE ARGUMENT ....................................................1

II.   INTRODUCTION AND BACKGROUND.........................................2

    A.   The Complaint ..............................................................2

    B.   Sound Waves: Frequency, Wavelength, Amplitude and Phase ................3

    C.   Fundamental Tones and Overtones ............................................7

    D.   The '961 Patent and Its Prosecution History................................7

    E.   Uses of Phase Shifts for Purposes Other
        than Encoding of Audio Watermarks........................................9

III.  LEGAL STANDARD: THE COMPLAINT MUST SET FORTH
    FACTS WHICH MAKE INFRINGEMENT PLAUSIBLE ............................10

IV.   ARGUMENT ...........................................................11

    A.   Both Counts Fail to Allege Facts Making Plausible
        that the Accused Cinavia Software Uses Phase
        Encoding as the Asserted Claims Require ................................12

    B.   Both Counts Fail to Allege Facts Making Plausible that
        the Accused Cinavia Software "Selects" a Fundamental
        Tone and an Overtone as the Asserted Claims Require..........................17

    C.   Plaintiff's Willfulness Allegation Should Be Dismissed
        Because It Impermissibly Rests on Plaintiff's Own Decision
        to Dismiss the Delaware Case and Re-File in this Court........................19

V.    REQUEST FOR JUDICIAL NOTICE ..........................................20

VI.   CONCLUSION ...........................................................20

## **TABLE OF AUTHORITIES**

**CASES**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...........................................................................11

*AXS Grp. LLC v. LISNR, Inc.*,
    2018 WL 4804348 (C.D. Cal. May 25, 2018).................................. 10, 15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................... 10, 11

*Bot M8 LLC v. Sony Corp. of Am.*,
    4 F.4th 1342 (Fed. Cir. 2021).......................................................... 10, 15

*EveryMD.com LLC v. Amazon.com, Inc.*,
    2017 WL 6886181 (C.D. Cal. Dec. 5, 2017) ........................................ 8, 20

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001)...............................................................20

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
    572 U.S. 915 (2014) ..........................................................................17

*Prestige Pet Prods., Inc. v. Pingyang Huaxing Leather &
    Plastic Co.*,
    767 F. Supp. 2d 806 (E.D. Mich. 2011) ....................... 10, 11, 17, 18

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
    442 F.3d 741 (9th Cir. 2006)................................................................20

*Sleep No. Corp. v. Sizewise Rentals, LLC*,
    2018 WL 5263065 (C.D. Cal. Jun. 26, 2018) ........................................19

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
    930 F.3d 1295 (Fed. Cir. 2019) ............................................................19

*Vervain, LLC v. Micron Tech., Inc.*,
    2022 WL 23469 (W.D. Tex. Jan. 3, 2022)........................... 8, 11, 17, 18

**RULES**

Fed. R. Civ. P. 12(b)(6)...........................................................................20

## MEMORANDUM OF POINTS AND AUTHORITIES

MZ Audio Sciences, LLC ("MZ Audio" or "Plaintiff") filed a complaint accusing Sony Group Corporation (Japan), Sony Corporation of America, Sony Interactive Entertainment LLC, Sony Pictures Entertainment Inc., and Sony Electronics Inc. (collectively "Sony" or "Defendants") of infringing claims 1 and 9 ("the asserted claims") of U.S. Patent No. 7,289,961 ("the '961 patent").[1]  The complaint should be dismissed under Rule 12(b)(6) for failure to state a claim for relief because it alleges no facts making it even remotely plausible that Sony practices the asserted claims.

## I.    SUMMARY OF THE ARGUMENT

The '961 patent concerns audio "watermarking"— in particular, methods and associated products implementing a specific audio watermarking technique commonly called "*phase encoding*." '961 patent, 1:23-24.  The use of a particular type of phase encoding was critical to allowance of the asserted patent, and is a necessary component of Plaintiff's infringement allegations in both Count I and Count II of the complaint.  However, the complaint fails to allege any facts suggesting it is plausible that Sony employs phase encoding, let alone the particular type of phase encoding described in the asserted patent.  Instead, the complaint at most alleges the existence of *phase shifts*—which were well known in the prior art for purposes *other than* phase encoding—in audio signals.[2] Because the complaint sets forth zero facts regarding any alleged use of phase encoding, let alone the particular type of phase encoding described in the asserted patent, both Counts I and II should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  *Infra* §§ IV.A, IV.BIV.B.

---

[1] The '961 patent was attached as Exhibit A to the complaint, Dkt. No. 1.

[2] In this brief, emphasis is added unless otherwise indicated.

- 1 -

The complaint's allegation of "willful" infringement should be dismissed for the additional and independent reason that it fails to meet the high bar for pleading willful infringement. Plaintiff implicitly admitted it lacks any basis for alleging willful infringement when it initially filed this suit in the District of Delaware without such an allegation. Plaintiff now attempts to leverage that earlier suit (which it voluntarily dismissed and re-filed in this Court) into a basis for willfulness, but this Court has expressly rejected that strategy. *Infra* § IV.C.

## II.   INTRODUCTION AND BACKGROUND

### A.   The Complaint

The complaint explains that one may embed "watermark" data in a digital audio file to enable verification of the file's integrity or origin. Dkt. No. 1, ¶ 20. Further, according to the complaint, audio watermarks may be "perceptible or imperceptible" to the listener, may have varying data capacity, and may reflect attributes such as "robust, fragile, or semi-fragile." *Id.* In short, there are many different types of audio watermarks.

Per the complaint, the '961 patent concerns a particular audio watermarking technique in which an "audio signal is divided into time frames," then "[in] each time frame, the relative phases of one or more frequency components are shifted to represent the data to be embedded." *Id.*, ¶ 48. This "phase encoding" is purportedly resistant to hacking because "detection and further manipulation of every intentionally-introduced phase shift ... would be difficult." *Id.*, ¶ 54.

Asserted claim 1 covers a "method for embedding data in an audio signal" including "***quantizing a phase difference*** of the at least one overtone relative to the fundamental tone ***to embed*** at least one bit of the data to be embedded." In other words, claim 1 concerns a particular technique for phase encoding.

Asserted claim 9 similarly covers a "device for extracting embedded data" in which data are extracted "***from the phase shift***." In other words, claim 9 is limited to a device that extracts an audio watermark based on phase encoding.

- 2 -

There are many other ways of embedding and extracting watermark data in an audio file that do not employ phase encoding.  Indeed, the complaint admits that multiple companies provided audio watermarking software between 1995 and 2000, several years before the '961 patent was filed in 2004.  *Id.*, ¶¶ 26-39.  One of the companies that the complaint admits offered audio watermarking software years before the '961 patent was filed is Verance—the same company that provides the current Cinavia software that Plaintiff identifies as the source of Sony's alleged infringement in this case (hereafter "accused Cinavia software").  *Id.*, ¶¶ 80-91. The complaint postulates that the accused Cinavia software is different from the prior art Cinavia software in that it is not hackable (*id.*, ¶ 95), but offers no facts suggesting what audio watermarking technique the accused Cinavia software uses, let alone facts making plausible that it uses phase encoding as required by the asserted claims.  Sony understands that the accused Cinavia software does not, in fact, use phase encoding.  For purposes of this motion to dismiss, however, the Court need not decide that issue.  The Court need only decide whether the complaint sets forth facts sufficient to make it plausible that the accused Cinavia software uses phase encoding—*i.e.*, in the complaint's own terminology, "intentionally-introduced phase shift[s]" that embed data.  *Id.*, ¶ 54.  Because the complaint sets forth no such facts, it should be dismissed under Rule 12(b)(6).

**B.    Sound Waves: Frequency, Wavelength, Amplitude and Phase**

This section provides background concepts and terminology related to the physics of sound as context for the '961 patent's claimed phase encoding method of audio watermarking.

Sound is a vibration that propagates as a wave through a medium such as air.  When a sound wave reaches a human ear, it causes vibration of the eardrum, which the brain interprets as sound.  How one hears the sound will depend on the properties of the wave.

1        Sounds of higher frequency are perceived by the brain as having a higher

2   pitch.  The diagram below shows the inverse correlation between frequency and

3   wavelength in a simple waveform with a single frequency component.

4   "Wavelength" refers to the distance between two peaks of a wave.  Frequency

5   refers to how often those peaks arrive.  If one wave arrives per second, the wave

6   has a frequency of 1 Hertz (Hz).  If 1,000 waves arrive per second, the wave has a

7   frequency of 1 kilohertz (kHz).





20        The height of a wave is called its "amplitude."  A sound wave with a larger

21   amplitude displaces the eardrum to a greater degree, and is perceived as being

22   louder.

 

- 4 -

1    A "phase shift" refers to the extent to which a wave is shifted in time, as

2 shown below.  There are many reasons why a wave may undergo a phase shift.



10    Similarly, a "phase difference" between two waves refers to the offset

11 between the peaks (or troughs) of those two waves.  Two waves are "in phase" if

12 their peaks and troughs coincide in time.  Otherwise they are "out of phase," and

13 hence reflect a "phase difference."  The first example below shows two waves with

14 the same amplitude and frequency, that are out of phase and thus reflect a phase

15 difference.  Two waves are completely out of phase when they are 180 degrees

16 (or $\pi$ radians) apart, in which case the peaks of one wave coincide with the troughs

17 of the other, as shown in the second example below.



1       In actuality, most sounds are made up of many different waves, which
2   include different frequency components with different amplitudes, that propagate
3   in parallel and arrive at the ear in overlapping fashion.

4       To describe what the human ear experiences from sounds generated in the
5   real world, one can plot a graph of frequencies (which can be thought of as pitch)
6   versus amplitude (which can be thought of as loudness).  The complaint includes
7   such a graph on page 36 (Dkt. No. 1, ¶ 117):



    This graph purports to show that, at a moment in time, an audio signal from
a Sony Blu-ray disc contains many different frequencies of different volumes.  The
highest-volume frequency is 98.77 Hz, which is just shy of 100 (*i.e.*, $10^2$) Hz on the
x-axis of the graph.  The complaint calls this a "fundamental tone," a phrase that
will be discussed below.  According to the graph, the "fundamental tone" has an
amplitude of just over 50 dB.  The graph reflects many other frequencies, two of
which the complaint labels as the "1st harmonic" and the "2nd harmonic."  These
terms will also be discussed below.

### C.   Fundamental Tones and Overtones

A "fundamental tone," also called a "fundamental frequency," is the lowest periodic frequency in an audio spectrum.  It is unclear why Plaintiff identified 98.77 Hz as a fundamental tone in the graph above, even though lower frequencies are present, but for purposes of this motion, Sony accepts Plaintiff's identification.

An "overtone" is a frequency that is an integer multiple of the fundamental frequency.  For example, Figure 4 of the '961 patent depicts an "apparent fundamental tone" with frequency $f_0$ and "overtones" with frequencies that are integer multiples of $f_0$—*i.e.*, $2f_0$, $3f_0$, $4f_0$, $5f_0$.  '961 patent, Fig. 4, 5:43-47.

The terms "fundamental tone" and "overtone" are important because both claims 1 and 9 require "selecting a fundamental tone and at least one overtone." MZ Audio treats "overtone," used in the claims, as synonymous with "harmonic," used in the complaint, for example in the graph reproduced on page 6 above.

### D.   The '961 Patent and Its Prosecution History

Claim 1 of the '961 patent recites:

> A method for embedding data in an audio signal, the method comprising:
>
> (a) dividing the audio signal into a plurality of time frames and, in each time frame, a plurality of frequency components;
>
> (b) in each of at least some of the plurality of time frames, selecting at least two of the plurality of frequency components; and
>
> (c) altering a phase of at least one of the plurality of frequency components in accordance with the data to be embedded, wherein:
>
> > step (b) comprises ***selecting a fundamental tone and at least one overtone***; and
> >
> > step (c) comprises ***quantizing a phase difference of the at least one overtone relative to the fundamental tone to embed at least one bit of the data to be embedded***.

As noted above, the concept of embedding watermark data based on phase is known as "phase encoding." This technique was known in the prior art, as the prosecution history of the '961 patent demonstrates.

As originally filed with the application that became the '961 patent, claim 1 required selecting two frequency components and then "altering a phase of at least one" of them "in accordance with the data to be embedded." Request for Judicial Notice ("RJN") Ex. A at 179.[3] The Examiner rejected the claim because embedding data via phase alteration was known prior art. *Id.* at 123-124, 90-91. The Examiner, though, was willing to allow claim 1 if it was amended to limit the method to embedding data based on a phase difference of a fundamental tone relative to an overtone. *Id.* at 128, 95-96.

The applicants agreed to amend claim 1 per the Examiner's instructions, thus conceding that phase encoding was known in the prior art. *Id.* at 77, 81. The purported point of novelty of claim 1 is phase encoding based on the phase difference between specific frequencies: a fundamental tone and an overtone.

The history of claim 9 was similar. Original claim 23 required "determining a phase shift" and extracting embedded data "from the phase shift." *Id.* at 182. Per the Examiner's instructions, the applicants later drafted claim 25 (which ultimately issued as claim 9) that incorporated claim 23's requirements and also required "selecting" a fundamental tone and an overtone. *Id.* at 79, 81.

---

[3] Defendants are concurrently filing a Request for Judicial Notice ("RJN") with this Motion, along with the supporting Declaration of Claire E. Schuster. Citations to the RJN exhibits will be denoted ("RJN Ex. _"). RJN Ex. A, the '961 patent's publicly-available file history, is admissible under Fed. R. Evid. 201. *EveryMD.com LLC v. Amazon.com, Inc.*, 2017 WL 6886181, at *3-*4 (C.D. Cal. Dec. 5, 2017) (Birotte, J.); *Vervain v. Micron Tech.*, 2022 WL 23469, at *5 n. 2 (W.D. Tex. Jan. 3, 2022) (granting motion to dismiss patent infringement complaint: "Courts may take judicial notice of government records, like prosecution history available on the U.S. Patent & Trademark Office's Public PAIR site, even when resolving a Rule 12(b)(6) motion.").

### E.   Uses of Phase Shifts for Purposes Other than Encoding of Audio Watermarks

There are many reasons for shifting the phase of an audio signal that do not involve embedding (or extracting) watermark data based on the phase shift.

For example, long before the '961 patent, it was known that modulating the phase of an audio signal **before** embedding watermark data could enhance the watermark's security.  Verance disclosed in US Patent No. 6,145,081 (RJN Ex. B) (issued in November 2000, over three years before the '961 patent was filed in 2004) phase shifting as a pre-processing step before application of a watermark in any desired manner, *i.e.*, the watermark need not be based on phase encoding.[4]

> As shown in FIG. 1, according to one preferred embodiment of the invention, a phase modulator 6 receives a cover signal 2 (such as an audio signal…) and modulates the phase characteristics of the cover signal 2….  The resultant phase-modulated cover signal 4 is then applied to a watermark embeddor 8, for embedding watermarking information, to obtain a stego signal 10…. ***The specific watermarking process utilized by watermark embeddor 8 is not material to the present invention, and any known method of embedding watermark information, including the methods mentioned above, could be used in the implementation of embeddor 8.***

RJN Ex. B, 3:39-55.

Accordingly, one cannot assume that watermarking—let alone watermarking by Verance—is done through phase encoding merely because the phase of an audio signal has been modulated.  Phase modulation is also entirely consistent with other watermarking methods in which watermark data is neither embedded nor extracted based on the phase of an audio signal.

---

[4] RJN Ex. B, a publicly-available United States patent, is admissible evidence. *See supra* n. 3.

- 9 -

## III.   LEGAL STANDARD: THE COMPLAINT MUST SET FORTH FACTS WHICH MAKE INFRINGEMENT PLAUSIBLE

A complaint must allege "enough facts to state a claim to relief that is plausible on its face" to avoid dismissal under Rule 12(b)(6).  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In patent cases, the plaintiff must plead sufficient factual content making plausible the conclusion that each asserted claim element is met.  *Bot M8 v. Sony Corp. of Am.*, 4 F.4th 1342, 1354 (Fed. Cir. 2021). While for purposes of a motion to dismiss the Court must construe all factual inferences in the light most favorable to the plaintiff, it is not required to accept as true conclusory recitations that "merely track the claim language, and do not plausibly allege [infringement]."  *Id.*; *AXS Grp. v. LISNR*, 2018 WL 4804348, at *3 (C.D. Cal. May 25, 2018) (dismissing complaint that "merely parrots the claim language rather than specifically explaining how a limitation is met by the accused products").

Where there exists an "obvious alternative explanation" other than infringement—for example, that the accused product practices the prior art—it is particularly important that the complaint set forth facts making infringement plausible.  *E.g.*, *Vervain*, 2022 WL 23469 at *5 (granting motion to dismiss patent infringement complaint that offered no factual predicate for alleged practicing of claim limitation representing the invention's "point of novelty" and thus "merely articulat[ed] why it is plausible that the accused product practices the prior art"); *Prestige Pet Prods. v. Pingyang Huaxing Leather & Plastic*, 767 F. Supp. 2d 806, 812 (E.D. Mich. 2011) (granting motion to dismiss patent infringement complaint that failed to set forth facts making plausible that defendant's dog treats were made using the claimed manufacturing technique as opposed to prior art techniques).

- 10 -

**IV.   ARGUMENT**

As discussed above, the asserted claims of the '961 patent require that watermarking of the audio signal must be carried out via phase encoding, as opposed to other watermarking techniques that do not involve embedding watermarks based on phase differences or phase shifts.

Although the complaint alleges (via measurements allegedly made by Plaintiff) that a frequency in a Sony audio signal undergoes a phase shift, the complaint offers zero facts making even remotely plausible that this phase shift is used to embed or extract data.  It is indisputable, as the '961 patent's file history reinforces, that (1) phase shifts in audio signals and (2) audio watermarking were both in the prior art.  Further, as explained above, Verance's own prior art patent described introducing phase shifts as a pre-processing step for security purposes ***before*** adding audio watermarking, with the watermarking implemented using techniques other than phase encoding.  The complaint fails to plausibly suggest that Sony uses the claimed phase encoding as opposed to a prior art technique like that described in Verance's patent.

Given the absence of any facts making plausible that the phase shifts observed by Plaintiff involve phase encoding, the complaint renders infringement nothing "more than [a] mere possibility," and therefore fails to state a claim upon which relief can be granted.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Twombly*, 550 U.S. at 555.

Indeed, by pleading facts suggesting only ***the existence*** of a phase shift, as opposed to ***use of an "intentionally introduced phase shift" to embed/extract data***, Dkt. No. 1, ¶ 54, the complaint does nothing more than "articulat[e] why it is plausible that the accused product practices the prior art"—a textbook formula for dismissal.  *Vervain*, 2022 WL 23469 at *5; *Prestige Pet*, 767 F. Supp. 2d at 812.

- 11 -

### A.     Both Counts Fail to Allege Facts Making Plausible that the Accused Cinavia Software Uses Phase Encoding as the Asserted Claims Require

Based on measurements allegedly made by Plaintiff, the complaint alleges that the accused Cinavia software causes phase shifts in particular frequencies in audio signals.

In paragraphs 116 and 130, the complaint provides the following graph, which purports to show a phase shift, resulting from use of the accused Cinavia software, in the 197.54 Hz frequency.



Dkt. No. 1, ¶¶ 116, 130.

Enlarging the circled portion may assist the Court in appreciating the complaint's allegation.



The complaint alleges that the dotted line represents the original 197.54 Hz audio signal, before running it through the accused Cinavia software, while the solid line represents the processed version of the 197.54 Hz audio signal after running it through the accused Cinavia software.  Per the complaint's allegations, at approximately 0.281 seconds, the original signal is at a peak (upper purple arrow added by Sony), while the processed signal is at a trough (lower purple arrow added by Sony).  Thus, the complaint alleges, the processed 197.54 Hz audio signal reflects a phase shift, compared to the original 197.54 Hz audio signal, of about π radians (180 degrees) at about 0.281 seconds.  *Id.*; *see also supra* § II.BII.B  (explaining phase shift).

Similarly, in paragraph 146, the complaint provides the following graph, from a different (third-party) Blu-ray disc, which purports to show a phase shift, resulting from use of the accused Cinavia software, in the 626 Hz frequency.



Dkt. No. 1, ¶ 146.

The complaint alleges that this graph shows another phase shift of about π radians (180 degrees) in the processed 626 Hz audio signal (black) compared to the original 626 Hz signal (red) at about 2.38 seconds.  *Id.*  The purple arrows below, added by Sony, point to a peak of the original (red) signal and a trough of the processed (black) signal.

- 13 -



Accepting all of Plaintiff's allegations in paragraphs 116, 130 and 146 as true, these paragraphs allege facts suggesting *the existence* of phase shifts in audio signals, but they do not allege, let alone set forth facts making plausible*, that phase shifts (or phase differences) are used to embed or extract watermark data* as required by the following limitations of asserted claims 1 and 9.

Claim 1: "A method for *embedding data* in an audio signal … comprising"

- "(c) altering a phase of the at least one of the plurality of frequency components in accordance with the data to be embedded" and

- "quantizing a *phase difference* of the at least one overtone relative to the fundamental tone *to embed at least one bit of the data*…"

Claim 9: "A device for *extracting embedded data from an audio signal*, the device comprising … a processor … for"

- "(c) determining a phase shift which has been applied to at least one of the plurality of frequency components in accordance with the embedded data" and

- "(d) *from the phase shift* determined in step (c), *extracting* the embedded data"

- 14 -

No such facts are alleged anywhere else in the complaint.  The paragraphs of the complaint concerning the alleged use of phase shifts to embed or extract watermark data merely parrot claim language, without reciting any factual content to show it is plausible that the accused Cinavia software practices the claimed invention.  *Bot M8*, 4 F.4th at 1355 (affirming dismissal of patent infringement claim because the complaint contained "conclusory" allegations that "merely track the claim language" of the patent without plausibly alleging facts suggesting that a key claim limitation was met); *AXS Grp.*, 2018 WL 4804348, at *3 (dismissing complaint that "merely parrots the claim language rather than specifically explaining how a limitation is met by the accused products").

As explained above, phase shifts are entirely consistent with watermarking methods in which watermark data is neither embedded nor extracted based on the phase of the audio signal.  Accordingly, the presence of phase shifts alone does not supply a sufficient factual predicate to plausibly infer that Sony practices the claimed invention.  Simply put, the complaint pleads no relevant facts.

For example, in alleging direct infringement of claim 9, paragraph 118 of Count I states that Sony's accused products "***determine a phase shift … which has been applied*** to at least one of the plurality of frequency components ***in accordance with the embedded data***."  Paragraph 118 thus parrots verbatim limitation (c) of claim 9, but offers no factual content suggesting it could plausibly be true.

Similarly, paragraph 119 parrots limitations (c) and (d) of claim 9 by alleging that Sony's accused products "***determine the phase shift*** in the audio signal ***to retrieve or extract the embedded data*** … in the watermark," but again offers no factual content suggesting that this allegation could plausibly be true.

Paragraph 123 likewise parrots claim 9 as a whole without offering any factual content.  It baldly asserts that "Cinavia-enabled devices "determin[e] a phase shift" and extract "embedded data determined from the phase shift."

- 15 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Count I's treatment of claim 1 parallels its treatment of claim 9.

Paragraph 124 parrots claim 1 without offering any factual content. Paragraph 126 likewise baldly asserts that SPE is "embedding data" by "quantizing a phase difference."

As noted above, Paragraph 130 alleges the existence of a phase shift, but does not allege, let alone set forth facts suggesting, that any phase shift is "in accordance with" embedded data, let alone that the accused Cinavia software "quantiz[es] a phase difference … to embed" data as required by claim 1.

Paragraph 132 alleges that Sony "alters a phase of at least one of the plurality of frequency components … in accordance with the data to be embedded."  Paragraph 132 thus parrots limitation (c) of claim 1, but offers no factual content suggesting it could plausibly be true.

Similarly, paragraph 133 alleges that Sony uses watermark embedders that "alter the phase in the audio signal to embed data … in the watermark," and paragraph 134 alleges that "the watermark is represented by the phase shift," but neither paragraph offers any factual content suggesting their allegations could plausibly be true.[5]

Paragraph 135 likewise repeats the allegation that Sony uses watermark embedders that "apply[] a phase shift to the harmonic to embed data in the audio signal thereby creating the watermark," but without any factual content suggesting it could plausibly be true.

In summary, Count I should be dismissed because it nowhere alleges any facts plausibly suggesting that Sony practices the claimed phase encoding.

---

[5] In addressing claim 1, the complaint also focuses on phase shifts in a particular frequency, rather than a "phase difference" between a fundamental frequency and an overtone frequency as required by claim 1.

The complaint also alleges indirect infringement of claim 1 in Count II. Because there can be no indirect infringement without an underlying act of direct infringement, *Limelight Networks v. Akamai Techs.*, 572 U.S. 915, 922 (2014), Count II is fatally deficient for the same reasons as Count I.  The only paragraphs in Count II that potentially relate to phase encoding are 144-146.  But paragraph 144 parrots claim 1 without offering any factual content suggesting that phase shifts are used to embed watermarks data as claim 1 requires, while paragraph 145 refers back to earlier paragraphs, none of which offer any factual content either. Finally, as noted above, paragraph 146 alleges the existence of a phase shift but does not allege, let alone set forth facts suggesting, that phase differences are used to embed watermark data as claim 1 requires.

As explained above, an "obvious alternative explanation" for the existence of phase shifts is the use of phase modulation in a security-related pre-processing step before watermarks are applied.  *See supra* § II.E.  In that case, per Verance's own prior art patent, any type of audio watermarking—including techniques that do not involve phase encoding—could be used.  *Id.*  Absent **facts** making plausible that phase encoding is used, the complaint offers mere speculation that there could be infringement, and thus fails to state a claim upon which relief can be granted. *Vervain*, 2022 WL 23469, at *5; *Prestige Pet*, 767 F. Supp. 2d at 812.

### B.    Both Counts Fail to Allege Facts Making Plausible that the Accused Cinavia Software "Selects" a Fundamental Tone and an Overtone as the Asserted Claims Require

Even if, despite the lack of relevant factual allegations in the complaint, *see supra* § IV.A, the Court were to find the complaint has adequately pled that the accused Cinavia software applies watermarks through phase encoding, the complaint still fails to set forth any facts making plausible that the accused Cinavia software "selects" the specific frequencies that both asserted claims 1 and 9 require to be "selected"—namely a fundamental tone and an overtone.

- 17 -

In other words, even if the accused Cinavia software did use phase encoding, it could do so using phase shifts in (and/or phase differences between) an infinite number of other frequencies without "selecting" the specific frequencies recited in claims 1 and 9.

It bears repeating that the selection of these two specific frequencies (a fundamental tone and an overtone) is the reason the Examiner was willing to allow the claims of the '961 patent, *i.e.*, selection of these two frequencies is the claims' purported point of novelty. *See supra* § II.D.

Yet, incredibly, Count I nowhere even alleges that that the accused Cinavia software selects these two frequencies, and certainly provides no facts making that notion plausible. Indeed, the only times that Count I even uses the word "select" is when it parrots the language of claims 1 and 9. Dkt. No. 1, ¶¶ 103, 105, 123, 124. Similarly, Count II only uses the word "select" when it parrots the language of claim 1. *Id.*, ¶¶ 144, 147.

Absent factual content making such selection plausible, the complaint—even if Defendants' other arguments are disregarded—only alleges what the Examiner of the '961 patent expressly found that the prior art had disclosed. To overcome that prior art, the Examiner required the applicants to amend their claims to require selection of a fundamental tone and an overtone. Under these circumstances, both counts of the complaint should be dismissed, since the asserted claims in both counts requires the missing "selection." *Vervain*, 2022 WL 23469, at *5 (granting motion to dismiss patent infringement complaint that offered no factual predicate for alleged practicing of claim limitation representing the invention's "point of novelty" and thus "merely articulat[ed] why it is plausible that the accused product practices the prior art"); *Prestige Pet*, 767 F. Supp. 2d at 812 (granting motion to dismiss patent infringement complaint that failed to set forth facts making plausible that defendant's dog treats were made using the claimed manufacturing technique as opposed to prior art techniques).

**C.    Plaintiff's Willfulness Allegation Should Be Dismissed Because It Impermissibly Rests on Plaintiff's Own Decision to Dismiss the Delaware Case and Re-File in this Court**

Plaintiff first sued in the District of Delaware on November 24, 2021 and *did not allege willfulness*.  RJN Ex. C.  After Sony pointed out that venue was improper in Delaware for multiple defendants, Plaintiff voluntarily dismissed the Delaware case on February 8, 2022, and, on the same day, re-filed in this District.

Aside from making minor ministerial corrections (*e.g.*, dropping a defendant for which venue is improper in this District and correcting its allegation regarding another defendant's state of incorporation), Plaintiff's only substantive modification was to allege that Sony's infringement of the '961 patent is willful. *Compare* Dkt. No. 1, Prayer for Relief, ¶ 5 *with* RJN Ex. C, Prayer for Relief.

The bar to plead willful infringement is high.  Willful infringement requires not only knowledge of the infringed patent and the likelihood of infringement, but also "wanton, malicious and bad-faith behavior."  *SRI Int'l v. Cisco Sys.*, 930 F.3d 1295, 1308 (Fed. Cir. 2019).  Plaintiff effectively admitted, when it elected not to allege willfulness in its November 2021 Delaware complaint, that there are no facts supporting willfulness here.  The only additional fact pled in its February 2022 complaint in this District is Sony's purported knowledge of the asserted patent based on the filing of the earlier Delaware complaint.  Dkt. No. 1, ¶ 98.  That fact does not support a conclusion that the high bar for willfulness has been met here.

As this Court has held, merely re-filing in this District does not support a willfulness allegation.  "To construe the [Delaware] case[] as putting Defendants on pre-suit notice for purposes of th[is] case[] is unfair at best, and would establish a perverse incentive for plaintiffs to voluntarily dismiss and refile cases simply to establish willfulness and eligibility for treble damages."  *Sleep No. v. Sizewise Rentals*, 2018 WL 5263065, at *7 (C.D. Cal. Jun. 26, 2018) (Birotte, J.).  As it did in *Sleep No.*, this Court should dismiss Plaintiff's claim for willful infringement.

- 19 -

## V.    REQUEST FOR JUDICIAL NOTICE

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  The Court may, however, take judicial notice of matters of public record outside the pleadings that are not subject to reasonable dispute.  Fed. R. Evid. 201(b); *EveryMD.com*, 2017 WL 6886181, at *3-*4 (Birotte, J.).  For example, "publicly available [United States Patent and Trademark Office] records […] thus constitute matters of public record, [and] the Court takes judicial notice of these documents." *EveryMD.com*, 2017 WL 6886181, at *4 (Birotte, J.).  Similarly, court filings are properly subject to judicial notice. *Reyn's Pasta Bella v. Visa USA*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of pleadings, memoranda, and other court documents). Filed concurrently herewith is a Request for Judicial Notice of two publicly-available records from the United States Patent and Trademark Office, and one court filing from the earlier case involving the parties, which are also cited herein.

## VI.   CONCLUSION

Sony respectfully requests that the Court dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6).

Dated: April 29, 2022          By:  */s/ Peter S. Veregge*
                               Peter S. Veregge (SBN 155,769)
                               **CISLO & THOMAS LLP**
                               2829 Townsgate Road, Suite 330
                               Westlake Village, CA 91361

                               Michael N. Rader
                               **WOLF, GREENFIELD & SACKS, P.C.**
                               605 Third Avenue, 25th Floor
                               New York, NY 10158

Randy J. Pritzker
Charles T. Steenburg
Claire E. Schuster
Jie Xiang
**WOLF, GREENFIELD & SACKS, P.C.**
600 Atlantic Avenue
Boston, MA 02210

*Counsel for Defendants Sony Group Corporation (Japan), Sony Corporation of America, Sony Interactive Entertainment LLC, Sony Pictures Entertainment Inc., and Sony Electronics Inc.*